PICKERING *et al. v.* CAMPBELL, ordinary.

The acts of the General Assembly approved August 4 and August 8, 1916, respectively (Acts 1916, pp. 475, 476), the former entitled "An act to abolish the board of commissioners of roads and revenues of Murray County, and to provide for the disposition of the papers, books, accounts, contracts, and all other business pending before the board, and for other purposes," and the latter entitled "An act to create a board of supervisors of roads, bridges, and road funds for the County of Murray; to provide for their election; to give them control of the roads, bridges, and road funds of the county; to define their powers; to require them to give bond; to provide for their election; to fix their pay, and for other purposes," were nugatory and ineffectual as failing to provide adequate and legal election machinery for holding the election at which such acts were to be voted on for ratification or rejection, and to whom the returns should be made, and who should declare the result of such election.

APRIL 10, 1917.

Petition for injunction.   Before Judge Fite.   Murray superior court.   September 25, 1916.

The plaintiffs filed a petition praying that the ordinary of Murray county, J. M. Campbell, be enjoined from declaring the result of an election held under two acts of the General Assembly (Acts 1916, pp. 475, 476), in so far as it related to the ratification of either of said acts, from doing anything which would have the effect of recognizing the ratification of said acts or either of them

by the result of the election, from exercising any power or authority conferred upon him by the acts or either of them, and from interfering in any way with the commissioners of roads and revenues of the county in the discharge of their duties as such, etc.; and that the election held on September 12, 1916, in so far as the ratification of the above acts of the General Assembly was concerned, be declared illegal and invalid. Section 1 of the act of 1916 (Acts 1916, p. 475) provided for the repeal of the act of 1873, creating a board of commissioners of roads and revenues for Murray county, defining their powers and duties, etc. Section 2 of the act provided that the board of commissioners of roads and revenues should turn over to the ordinary of Murray County all the records, papers, books, accounts, and all business, etc., who should conduct the business of the county under the laws governing ordinaries in their official capacities. Section 3 of the act provided that the act should not become a law until "its ratification by the people at an election held for the purpose of abolishing said board of roads and revenues of Murray County, said election to be called by the ordinary at the next democratic State primary election to be held September 12, 1916." Section 4 provides, "That at said election those favoring abolishing the said board shall have written or printed on their ballots the words: 'For the abolition of the board of county commissioners,' and those opposed shall have written or printed on their ballots: 'Against the abolition of the board of county commissioners.'" The other act (Acts 1916, p. 476) was one "to create a board of supervisors of roads, bridges, and road funds for the County of Murray; to provide for their election; to give them control of the roads, bridges, and road funds of the county; to define their powers; to require them to give bond; to provide for their election; to fix their pay, and for other purposes." This, like the other act, supra, was not to become of force "until after its passage and approval by the Governor, and it shall have been submitted to the qualified voters of Murray County at an election to be held on the 12th day of Setpember, 1916, the date of the primary election for State officials, said election to be called by the ordinary of Murray County. And be it further enacted, that at said election those in favor of the approval of this act shall have written or printed on their ballots: 'For the board of road supervisors;' and those opposed to this act shall have written or printed

on their ballots: 'Against the board of road supervisors;' and a majority vote shall determine the approval or rejection of this act." The ordinary gave the following notice: "Notice of Election. Georgia, Murray County. To the qualified voters of the County of Murray: Notice is hereby given, and an election is hereby called to be held at each and all election precincts in the various militia districts of said county on the 12th day of September, 1916, on the date of and in connection with the State Democratic primary to be held on said date, at which election shall be submitted the question of abolishing the board of commissioners of roads and revenues of said county, as provided in an act passed by the General Assembly of Georgia, and approved on the 4th day of August, 1916. At said election all qualified voters are entitled to vote, and those favoring the abolition of said board shall have written or printed on their ballots the words, 'For the abolition of the board of county commissioners,' and those opposed shall have written or printed on their ballots, 'Against the abolition of the board of county commissioners.' Also, at the same date and under the same rules and requirements, there shall be voted on, by those qualified to vote, the question whether or not an act shall be ratified passed by the General Assembly of Georgia, and approved on the 8th day of August, 1916, entitled an act to create a board of supervisors of roads, bridges, and road funds for the County of Murray; to provide for their election; to give them control of the roads, bridges, and road funds of the county; to define their powers, require them to give bond; to provide for their election; fix their pay, and for other purposes. In said election those in favor of the approval of this act shall have written or printed on their ballots, 'For the board of road supervisors,' and those opposed to this act shall have written or printed on their ballots, 'Against the board of road supervisors.' The above-named election shall be held, and ballots prepared by the democratic executive committee of said County of Murray, by the managers named by them, and the returns made as provided by law in holding such primary elections, and a copy of the consolidation of the returns by the managers shall be certified to by them and returned to the office of the ordinary of Murray County, from which said ordinary shall declare the results of the election hereby called. Witness my hand and official signature, this the 15th day of August, 1916. J. M. Campbell, Ordinary of Murray County."

The court refused to enjoin the ordinary as prayed, and the plaintiffs excepted.

*C. N. King, J. M. Sellers,* and *D. W. Blair,* for plaintiffs.

*W. E. Mann,* for defendant.

HILL, J. (After stating the foregoing facts.) Error is assigned because the court refused to grant the injunction prayed for, and erred in authorizing the ordinary, J. M. Campbell, to take charge of the county affairs, as provided for in the act of the General Assembly as set out in the foregoing statement of facts. It is insisted that the acts under consideration are nugatory and void for indefiniteness and uncertainty. The first act was to be ratified by the people at an election held for the purpose of abolishing the board of roads and revenues of Murray county, "said election to be called by the ordinary at the next democratic State primary election to be held September 12, 1916." And the provision of the other act, relative to the ratification of that act at the election, was as general and indefinite as the first. The ordinary in his notice calling the election, among other things, stated that "The above-named election shall be held, and ballots prepared by the democratic executive committee of said County of Murray, by the managers named by them, and the returns made as provided by law in holding such primary elections, and a copy of the consolidation of the returns by the managers shall be certified to by them and returned to the office of the ordinary of Murray County, from which said ordinary shall declare the results of the election hereby called." In the case of *Cook* v. *State,* 137 *Ga.* 486 (73 S. E. 672), it was held that an act to abolish the city court of Newton (Acts 1910, p. 201), which provided that "the provisions of this act shall become of full force and effect only when ratified by a majority of the votes cast by the qualified voters of Baker county at an election to be held for the purpose of submitting the provisions of this act to the qualified voters of Baker county for their approval, which said election shall be held on the same date as the general election of State officers of Georgia is held, and those who wish to cast ballots for the provisions of this bill shall do so by casting ballots having written or printed upon them the words, 'Against the city court of Newton,' and those who wish to cast ballots in favor of the city court of Newton and against the provisions of this bill shall do so by casting ballots having written or

printed on them the words, "'For the city court of Newton,'" was "nugatory and ineffectual to abolish the city court of Newton, on the ground that it fails to provide 'how the election therein mentioned shall be held, who shall hold it, and to whom the returns of the election shall be made, and whose duty it shall be to declare the result of said election.'" And see *Tolbert* v. *Long,* 134 *Ga.* 292 (67 S. E. 826, 137 Am. St. R. 232). Mr. Justice Lumpkin and the writer dissented from the majority opinion in the *Cook* case, but the facts in that and the present case are quite different. In that case the election was to be held on the same date when the general election of State officers was held, and the votes were to be cast by legally qualified voters, etc. But in the present case the election was to be and was held, and the ballots prepared, by the democratic executive committee of Murray county. It is true that in the notice of the ordinary, and in one of the acts under consideration, it was provided that the act was to be submitted to the "qualified voters" of Murray county at an election to be held on the date of the democratic primary election; but there is no machinery provided in the act for holding the election, declaring the result, etc., and this could not be supplied by the ordinary, who was not directed by the acts how the call should be made, the election held, and the result declared, and who was interested in the result of the election, which was also to be held by members of one political party, at an election where it was shown by the party rules and regulations that only "white electors who are democrats and qualified to vote in the general elections, who in good faith will pledge themselves to support the democratic candidates for all offices to be voted on this year," were qualified to vote. It was alleged and proved that at least four legally registered colored voters of the county of Murray would not be permitted to vote at said election. White republicans would also be excluded, under this rule, from voting. In such election, under such rules, it could not be said that the acts of the General Assembly under consideration, or either of them, were "submitted to the qualified voters of Murray county," or were "ratified by the people" or by the "legally qualified voters" of the county. This being so, the court erred in not granting the injunction, and in authorizing the ordinary to take charge of the county affairs.

*Judgment reversed. All the Justices concur.*