19713.   STEMBRIDGE, Ordinary *v.* NEWTON.

ARGUED MAY 14, 1957—DECIDED JUNE 10, 1957.

*Robert H. Herndon, J. A. Gilmore, Randall Evans, Jr.,* for plaintiff in error.

*D. D. Veal,* contra.

DUCKWORTH, Chief Justice. ■ Unintelligible, illegal, and blank ballots should not be counted in computing the number of votes cast in an election, since a ballot can not become a valid vote unless it conforms to the requirements of law. 18 Am. Jur. 342, § 246; 29 C. J. S. 257, § 175. Therefore, an undecipherable ballot is a mere nullity, and the fallacy of allowing such ballots as votes is abundantly clear in the instant case, where this would result in such ballots being counted as votes against approval of the act rather than as undeterminable ballots.

Counsel for the plaintiff in error strongly insists that the undecipherable ballots should be counted as valid votes, citing *Joe* v. *State,* 136 *Ga.* 158 (70 S. E. 1104), and several other citations from foreign jurisdictions. We have considered the *Joe* case and do not find it applicable, nor are we bound by any of the rulings in foreign jurisdictions, and we follow them only when we think they are sound and logical. The *Joe* case did not involve mere tickets or ballots undecipherable, as the thirty are here, but was decided strictly upon a construction of the act as to the vote required to abolish a city court. The election there was a general election and not a special election involving only one issue such as here. There is a decided distinction between the two, a general election involving a multiplicity of subjects and candidates. The title of the act in the *Joe* case, calling for a referendum in a general election, required a majority of the qualified voters of said county to approve the provisions for them to be applicable. The body of the act, in addition to the above, further stated that, if a majority of votes cast at the general election be for the changes, then the act became operative. The court simply ruled that the number of votes cast in the election "being less than a majority of the qualified voters of the county" and "less than a majority of all votes cast at said election," although a majority of those voting on that particular issue voted approval, the ques-

tion did not pass. The act here in question states that, "if a majority of those persons voting in such election vote for approval of the act, then it shall become of full force and effect." There simply is no reason to consider the *Joe* case, since it does not involve the counting of ballots not properly marked as votes. The certification of the ordinary to the Secretary of State shows clearly that those persons attempting to vote the thirty undecipherable ballots did not cast valid votes in this election, and that a majority of the votes cast were for approval of the act.

■ The demurrers also challenge the validity of the act of 1956 (Ga. L. 1956, p. 2725). The plaintiff's case is dependent upon that act being valid, hence we now rule upon its validity. The act does not attempt to add any new member or members to the governing authority of the county, hence *Robertson* v. *Temple*, 207 *Ga.* 311 (3) (61 S. E. 2d 285), and the constitutional clause referred to in that decision (Code, Ann., § 2-1915) have no application. Furthermore, the Constitution (Code, Ann., § 2-1915) has been amended since the *Robertson* case, supra; and the statute (Code, Ann. Supp., § 47-801; Ga. L. 1946, p. 82), passed in conformity to this constitutional clause before its amendment in 1951 (Code, Ann. Supp., § 2-1915; Ga. L. 1951, p. 858, ratified November 4, 1952), and the original constitutional clause are no longer law.

The Constitution (Code, Ann., § 2-1916) provides that no law or section of the Code shall be amended or repealed by mere reference to its title or the number of the section of the Code. It requires that the amending or repealing act shall distinctly describe the law to be amended or repealed as well as the alteration to be made. The demurrer asserts that the act here involved offends this clause of the Constitution. In the first place, the Constitution (Code, Ann., § 2-5201) empowers the General Assembly to provide for the creation of county commissioners and define their duties. See *Wilson* v. *Harris*, 170 *Ga.* 800 (154 S. E. 388). On the question here raised, the body as well as the caption of the act attacked must be considered. *Ragans* v. *Ragans*, 200 *Ga.* 890 (39 S. E. 2d 162). When the act puts everyone on notice that a certain act is going to be amended, that satisfies the Constitution. *Holland* v. *State*, 155 *Ga.* 795 (118 S. E.

203). There is but one Baldwin County in this State, and the description of the act to be amended as an act to amend an act creating a Board of County Commissioners for Baldwin County, approved December 26, 1888 (Ga. L. 1888, p. 286), so as to provide for commissioner districts, etc., unmistakably identifies the law to be amended, reveals the legislative intent, and is valid against this attack. *Humthlett* v. *Reeves*, 211 *Ga.* 210 (2) (85 S. E. 2d 25).

The act is not void for failure to prescribe the way of holding the election, nor because it makes no provision for rules and regulations with respect to the election. The provisions relating to the referendum in sections one and two are supplemented by the general law (Code, Ann. Supp., § 34-132; Ga. L. 1949, pp. 1204, 1221), and are adequate. *Jacoby* v. *Dallis*, 115 *Ga.* 272 (41 S. E. 611); *Upson* v. *Almand*, 190 *Ga.* 376 (9 S. E. 2d 662). The decisions in *Cook* v. *State*, 137 *Ga.* 486 (73 S. E. 672), and *Pickering* v. *Campbell*, 146 *Ga.* 636 (92 S. E. 74), relied upon by plaintiff in error, are inapplicable, since the provisions there dealt with were materially different and were deficient.

Thus the act is not indefinite nor otherwise subject to any of the attacks made by the demurrers. The petition alleges a cause of action, and the court did not err in overruling the demurrers thereto.

As pointed out in *Newton* v. *Stembridge*, 212 *Ga.* 828, supra, while this special act does not provide for filling vacancies, it definitely creates vacancies by providing that the offices of all existing commissioners terminated December 31, 1956; and Code (Ann. Supp.) § 23-801 (Ga. L. 1898, p. 93; 1947, p. 173) provides for the calling of special elections in such cases. Therefore, since as ruled above, the act (Ga. L. 1956, p. 2725) is valid and is now the law, it becomes the duty of the Ordinary of Baldwin County to call an election to elect county commissioners as provided for in the 1956 act, and the court did not err in ordering the ordinary to call the election as prayed.

*Judgment affirmed. All the Justices concur except Head, J., not participating.*